**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------
MARIA THERESE PEARCE and WALTER
PEARCE,

                                        Plaintiffs,

            v.

HOLLAND PROPERTY MANAGEMENT, INC. and                    No. 06-CV-663
FOGARTY'S LAKE FLOWER MARINA, LLC,                            (DRH)

                    Defendants, Third-Party Plaintiff,
                    Cross-Claimants, Cross-
                    Defendants, and Counter-
                    Defendants,

            v.

KEVIN PEARCE,

                    Third-Party Defendant and
                    Counter-Claimant.
-------------------------------------------------------------------

**APPEARANCES:**                           **OF COUNSEL:**

WORBY GRONER EDELMAN LLP                    RICHARD S. VECCHIO, ESQ.
Attorney for Plaintiffs
11 Martine Avenue - Penthouse
White Plains, New York 10606

RYAN & SMALLACOMBE, PLLC                    MELISSA J. SMALLACOMBE, ESQ.
Attorney for Holland Property
        Management, Inc.
Suite 800
100 State Street
Albany, New York 12207

SMITH, SOVIK, KENDRICK &                    ROBERT P. CAHALAN, ESQ.
        SUGNET, P.C.
Attorney for Fogarty's Lake Flower
        Marina, LLC
Suite 600
250 South Clinton Street
Syracuse, New York 13202

GOLDBERG SEGALLA, LLP                          LATHA RAGHAVAN, ESQ.
Attorney for Kevin Pearce
Suite 300
8 Southwoods Boulevard
Albany, New York 12211

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiffs Maria Therese Pearce and Walter Pearce seek damages for Maria Pearce's personal injuries and Walter Pearce's loss of consortium allegedly suffered as the result of the negligence of defendants Holland Property Management, Inc. ("Holland") and Fogarty's Lake Flower Marina, LLC ("Fogarty's").  Second Am. Compl. (Docket No. 27).  Defendants in turn brought a third-party action against plaintiffs' son, Kevin Pearce.  Docket Nos. 20, 31, 32, 37.  Presently pending are both defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket Nos. 50-52.  Plaintiffs oppose the motion and request the award of costs in responding to defendants' motions.  Pls. Mem. of Law (Docket No. 57-15) at 38. For the reasons which follow, Holland's motion is denied, Fogarty's motion is granted, and plaintiffs' request for the award of costs is denied.


### I. Background

The facts are related in the light most favorable to plaintiffs as the non-moving parties. See subsection II(A) infra.

At all times relevant, Holland operated a commercial property at Ampersand Bay on Lake Flower near the Village of Saranac Lake in Northern New York.  I. Holland Dep. Tr.

2

(Docket No. 52-14) at 9-11.  Holland maintained the grounds and rented cabins and boats. Id. at 11.  Among the rental boats was one owned by Ira Holland, Holland's manager, called "Four Winns."  Id. at 13-16.  Four Winns is an outboard motor boat approximately 16' in length with the motor and the motor's attached, submerged propeller affixed to the rear of the boat behind seats for passengers.  Docket No. 50-16 at 3.  Fogarty's is located in the Village of Saranac Lake and, among other things, provides repair services for boats.  Fogarty Dep. Tr. (Docket No. 52-16) at 10.

Holland had purchased Four Winns in 2005 and shortly thereafter had requested Fogarty's to perform certain maintenance work on it.  I. Holland Dep. Tr. at 43, 46; M. Pearce Aff. (Docket No. 57-11) at ¶ 8.  Fogarty's was asked to diagnose a "no spark" problem in the motor which rendered the boat immobile.  Fogarty Dep. Tr. at 24-25, 44. 45; Rooks Dep. Tr. (Docket No. 52-20) at 68, 71-72; Tylawsky Dep. Tr. (Docket No. 52-22) at 21-22; Docket No. 50-16 at 52-53; Docket No. 52-35 at 1-2.  After the sparking problem was diagnosed and corrected, the Fogarty's mechanic, Mike Rooks, took the boat for a test drive to ensure that the engine was properly functioning.  Fogarty Dep. Tr. at 25, 51; Rooks Dep. Tr. at 74-76, 77-79, 103-04; Tylawsky Dep. Tr. at 23.  During the drive, Rooks noticed that the boat's motor was not shifting properly but was unable to determine the cause.  Rooks asked Ira Holland if Holland wished Rooks to continue to work on this problem, but Holland advised that the boat had already been rented and any further work needed to be postponed.  Fogarty Dep. Tr. at 25-26, 51; Rooks Dep. Tr. at 77-87, 90-92; M. Pearce Aff. at ¶¶ 9-11; Tylawsky Aff. (Docket

3

No. 57-12) at ¶¶ 12-18, 22-23; Kueny Dep. Tr. (Docket No. 57-10) at 72, 77-78; Docket No. 50-16 at 21.[1]

On August 11, 2005, the Pearces rented the Four Winns from Holland.  M. Pearce Dep. Tr. 1 (Docket No. 57-5) at 27-28; M. Pearce Aff. (Docket No. 57-11) at ¶ 6.  The Pearces had little boating experience and no one from Holland inquired about the Pearce's experience. M. Pearce Dep. Tr. 1 at 14-15, 41-43; W. Pearce Dep. Tr. 1 (Docket No. 57-4) at 6-8; M. Pearce Aff. at ¶¶ 12-15.  When the Pearces arrived at the marina, they  completed the boat rental agreement.  Sargent Dep. Tr. at 31-32; M. Pearce Dep. Tr. 1 at 34-35; K. Holland Dep. Tr. (Docket No. 57-7) at 25.  A Holland employee, Wes Sargent, then escorted the Pearces to the Four Winns at the dock and described the safety features and operation of the boat.  Sargent Dep. Tr. at 36; see also K. Pearce Dep. Tr. (Docket No. 52-27) at 28; M. Pearce Dep. Tr. 1 at 42; K. Holland Dep. Tr. at 26, 28.  Sargent also described the gear shifting problem, specifically stating "[t]hat you had to click the gear shifter back and forth a few times just to be sure safely that the gear was in the right gear," and demonstrated how to place the gear shift into neutral.  Sargent Dep. Tr. at 40-41, 71-72; see also K. Pearce Dep. Tr. at 29, 61-62; M. Pearce Dep. Tr. 1 at 44-45; W. Pearce Dep. Tr. 1 (Docket No. 57-4) at 9-10, 15-17; Tylawsky Aff. at ¶¶ 9-11; Docket No. 50-16 at 22.  Additionally, Sargent advised that "it was safe boating operation to make sure the boat was either in neutral or the boat

---

[1]Ira Holland asserts that he cannot recall the details of his conversations with Rooks but that he was informed that the motor's shifting was "sticky," a phenomenon he had already personally experienced.  I. Holland Dep. Tr. at 50-52, 82; Fogarty Dep. Tr. at 53; Sargent Dep. Tr. (Docket No. 52-25) at 24-26; Tylawsky Aff. at ¶ 21.

was off when somebody was climbing on or off the back of the boat." Sargent Dep. Tr. at 75; Docket No. 50-16 at 23.

Kevin Pearce, the plaintiffs' son, operated the boat for most of the afternoon of August 11, 2005, including when Maria Pearce entered the water to go "tubing."[2] K. Pearce Dep. Tr. at 45; M. Pearce Dep. Tr. 1 at 59. After tubing for several minutes, Maria fell off the tube and Kevin turned the boat around to assist his mother. K. Pearce Dep. Tr. at 46; M. Pearce Dep. Tr. 1 at 60-62. Kevin placed the motor into neutral by pulling the gear shift to reverse and pushing it forward into neutral. K. Pearce Dep. Tr. at 46, 55-56. As Maria began to board the boat, the propeller began rotating, dragged Maria under the water, and severely lacerated her lower body. M. Pearce Dep. Tr. 1 at 62-63; M. Pearce Dep. Tr. 2 (Docket No. 57-9) at 11-12; W. Pearce Dep. Tr. 1 at 17-18; M. Pearce Aff. at ¶¶ 40-41, 43, 45-46; Tylawsky Aff. at ¶¶ 27-28. The gear shift remained in the neutral position the entire time. K. Pearce Dep. Tr. at 72; M. Pearce Aff. at ¶ 44; Tylawsky Aff. at ¶¶ 25-26.

After the accident, Holland contacted Fogarty's to repair the shifting problem. Rooks Dep. Tr. at 106-107; Fogarty Dep. Tr. at 30-31. In the time which had elapsed between Rooks' previous repair work on the Four Winns and the accident, Rooks had learned of the possibility of a faulty SAM causing the shifting problems. Rooks Dep. Tr. at 110-11. Rooks diagnosed the cause of the shifting problem as a broken SAM, ordered a replacement SAM, and replaced the component. Rooks Dep. Tr. at 113-19; Fogarty Dep. Tr. at 30, 54, 94-98; King Dep. Tr. at 46; Kueny Dep. Tr. at 92-94. This corrected the shifting problem. Fogarty

---

[2]A water sport akin to water skiing in which an individual rides the water on a large inflated inner tube pulled by a motor boat.

5

Dep. Tr. at 89; King Dep. Tr. at 29-33, 36-37.  In the weeks before and after August 11, 2005, the Four Winns was rented to other boaters seven times.   K. Holland Dep. Tr. at 44-50.  None of the renters made any complaints about the Four Winns.  Id. at 57-59.  The boat was permanently removed from the water at the end of the season.  Id. at 7.

## II. Discussion[3]

Holland moves for summary judgment on two grounds.[4]  First, Holland argues that they received no reasonable notice of the broken SAM as would have made plaintiffs' injuries foreseeable.  Second, Holland contends that plaintiffs were responsible for the events of August 11 because they used a product in violation of its stated warnings.  Fogarty's moves for summary judgment on the ground that they had no duty to plaintiffs.

---

[3] Plaintiffs argue that defendants' expert testimony should be disregarded.  The testimony proffered by the experts during their depositions is consistent with the conclusions in their expert reports.  See generally Emig v. Elextrolux Home Products Inc., No. 06-CV-4791 (KMK), 2008 WL 4200988, at *3 (S.D.N.Y. Sept. 11, 2008) ("[T]o the extent the [testimony] merely provides evidentiary detail for the opinions expressed in [the expert's ] report, those portions can and will be considered.") (internal quotation marks and citations omitted).  Additionally, consistent with the spirit of Fed. R. Civ. P. 26(a)(2), the reports make clear what the experts' opinions are.  See Commercial Data Servers, Inc. v. Internat'l Bus. Mach. Corp., 262 F. Supp. 2d 50, 61 (S.D.N.Y. 2003).  Accordingly, plaintiffs' argument is rejected.

[4] In Holland's reply papers, Holland contends that various facts favorable to Holland are admitted by plaintiffs in light of their statement of material facts.  However, the papers including all statements of material facts, suffice to identify the factual issues.  Accordingly, Holland's contention is rejected.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

7

## B. Holland[5]

Under New York law, negligence claims are cognizable if "a duty is owed to the

plaintiff by the defendant; [defendant] breach[ed] . . . that duty; and [there was an] injury

substantially caused by that breach." Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 109,

215 (2d Cir. 2002).  Foreseeability pertains to multiple facets of a negligence claim including

the existence and scope of a defendant's duty, whether there was a breach of that duty, and

whether any breach caused the injury in question.  See Stanford v. Kuwait Airways Corp., 89

F.3d 117, 125 (2d Cir. 1996) ("[T]here are two concepts of foreseeability . . . [t]he first

concerns the foreseeability of the specific injury the plaintiff suffered, and focuses on whether

the defendant's actions are a proximate cause of the harm.  The second . . . concerns the

general foreseeable risk which is crucial to determining the existence of a duty . . . ."); Martell

v. St. Charles Hosp., 523 N.Y.S. 2d 342, 345 (N.Y. Sup. Ct. Suffolk County 1987) (explaining

that foreseeability has applications in both "the analysis . . . of whether a defendant has

actually breached a duty to a plaintiff . . . [by failing to] exercis[e] the foresight of an ordinarily

prudent person in the circumstances presented by the case at hand . . . . " and determining

whether "the consequences of an act . . . can be said to be so highly extraordinary, so

remote or so unlikely the actor is held not to be liable . . . for the reason that the result was

not a foreseeable [one] . . . . ") (citations omitted).  It is also important to note that

---

[5] Holland contends that to the extent that plaintiffs' assert a claim for products liability, those claims are without merit.  No such claim appears from the second amended complaint.  See Docket No. 27.  In any event, no such claim can be stated on these facts. See Sprung v. MTR Ravensburg Inc., 99 N.Y.2d 468, 473 (N.Y. 2003) (holding that products liability cases should be brought against the manufacturers and sellers).

> decisions as to lack of reasonable care and its nexus to a plaintiff's
> injury are quintessential jury questions . . . .  Thus, foreseeability and
> causation are issues generally and more suitably entrusted to a fact
> finder adjudication while the definition of the existence and scope of
> an alleged . . . duty is usually a legal, policy laden declaration
> reserved for Judges.

Lombard, 280 F.3d at 215-16 (internal quotation marks and citations omitted); Derdiarian v.

Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980) (holding that "[g]iven the unique

nature of the inquiry in each case, it is for the finder of fact to determine [foreseeability]. . . ,"

especially since "what is foreseeable and what is normal may be the subject of varying

inferences . . . .").


## 1. Duty and Breach

In New York, a property owner owes a duty of care to those lawfully using the property

to exercise reasonable care under the circumstances in maintaining the property in a safe

condition.  DeVeau v. United States, 833 F. Supp. 139, 142 (N.D.N.Y. 1993) (citations

omitted).  Circumstances bearing on this duty "includ[e] the likelihood of injury to others, the

seriousness of the injury, and the burden of avoiding the risk."  Id. (citations omitted).  Thus,

a plaintiff must demonstrate

> that there was a dangerous condition and that either the
> defendant affirmatively created . . . or had notice [of it] . . .; after
> [such] knowledge or notice was received, the defendant had a
> reasonable opportunity to correct the dangerous condition . . .;
> and that the defendant. . . failed to correct the condition within a
> reasonable time thereafter.

Id. at 143 (citations omitted).  The primary focus in the inquiry on duty concerns "whether the defendant's conduct created a foreseeable zone of risk, *not* whether the defendant could foresee the specific injury that actually occurred."  Stanford, 89 F.3d at 125.

As lessor and landowner, Holland had a duty to keep their property, including the rental boats, in safe operating condition. The injuries Maria Pearce suffered were serious. Thus, the principal question presented is whether an ordinarily prudent person in Holland's circumstances would have known that there existed a dangerous condition which they should have remedied.

Viewing the facts in the light most favorable to plaintiffs, Ira Holland was aware of the shifting problems in the Four Winns as he had personally encountered those problems and been informed about them by both his employees and a Fogarty's mechanic.  I. Holland Dep. Tr. at 50-52, 82; Fogarty Dep. Tr. at 53; Sargent Dep. Tr. at 24-26; Tylawsky Aff. at ¶ 21. Additionally, Holland had the opportunity to remedy the defective condition by allowing Fogarty's to continue its repair work rather than renting the boat to plaintiffs.  See, e.g., Rooks Dep. Tr. at 90-91.  Instead, Holland choose to forego the additional mechanical work and rent the boat.  See, e.g., Rooks Dep. Tr. at 90-92.  Expert testimony, if credited, establishes that mechanical shifting problems in combination with the high likelihood of propeller injuries to boat passengers and users produces a reasonably dangerous condition which should have been avoided.  Tylawsky Dep. Tr. at 109-10, 148-49; Tylawsky Aff. at ¶¶ 38-39, 45; Kueny Dep. Tr. at 88-89, 97-98; Docket No. 50-16 at 29.  While Holland may not have been aware that the shifting problems were due to a faulty SAM and could cause the particular injuries suffered by plaintiffs, these factors do not obviate foreseeability or

10

Holland's duty.  Holland's decision to rent the boat before repair increased the foreseeable zone of risk to plaintiffs and breached Holland's duty to plaintiffs.

Therefore, Holland's motion for summary judgment on these grounds is denied.

### 2. Causation

A "plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produce the injury . . . [but p]laintiff need not demonstrate . . . that the precise manner in which the accident happened, or the extent of injuries, was foreseeable."  Derdiarian, 414 N.E.2d at 670 (citations omitted).  Thus, "where the general risk and character of injuries are foreseeable," a defendant is liable for his or her negligent conduct.  Id. at 671; see also Mack v. Altmans Stage Lighting Co., 470 N.Y.S. 2d 664, 667 (N.Y.A.D. 2d Dep't 1984) ("[I]f, with the benefit of hindsight, it appears highly extraordinary that defendant's act should have brought about the harm, the act will bot be considered a proximate cause.").

In this case, viewing the facts in the light most favorable to plaintiffs, it is clear that Holland's actions were a substantial cause for the injuries which occurred.  While it is most likely true that all parties could not have correctly predicted the specific injuries which would result, expert testimony establishes that propeller injuries are common in water sports and a shifting mechanism problem would significantly increase that risk.  Tylawsky Dep. Tr. at 109-10, 148-49; Tylawsky Aff. at ¶¶ 38-39, 45; Docket No. 50-16 at 29.  Therefore, even though a reasonably prudent person in Holland's position might not foresee that the boat would remain in gear and severely lacerate Maria Pearce's leg as she attempted to board the boat, such a

11

reasonably prudent person would be fully aware of the shifting problem, as was Holland. Continuing to rent the boat in these circumstances significantly increased the risk of an accident, especially a propeller accident, and substantially contributed to the occurrence of the accident.  Moreover, whether knowledge of the shifting failures constituted adequate notice is for the jury to resolve.  See Lombard, 280 F.3d at 215-16; Derdiarian, 414 N.E.2d at 666; see also Peevey v. Burgess, 596 N.Y.S. 2d 250, 251 (N.Y.A.D.. 4th Dep't 1993).  Thus, plaintiffs have proffered sufficient evidence to raise a question of fact as to causation for resolution by a jury.

Holland relies on the fact that no prior accidents occurred and no complaints were received from those renting the Four Winns.  K. Holland Dep. Tr. at 57-59.  There is no dispute, however, that Holland was aware of the defective shifting condition.  Ira Holland had both experienced the condition personally while moving the boat and was informed of the problem by both a Holland employee and Fogarty's mechanic.  I. Holland Dep. Tr. at 50-52, 82; Fogarty Dep. Tr. at 53; Sargent Dep. Tr. at 24-26; Tylawsky Aff. at ¶ 21.  By failing to remedy the problem and renting the boat in a defective condition, Holland assumed responsibility for the dangerous condition.  "The fact that there were no prior accidents simply means that the defendants had been very fortuitous in the past . . . [but since defendants] create[d the] dangerous condition, [they] are not immune from liability for the first accident . . . ."  DeVeau, 833 F. Supp. at 144.

Therefore, Holland's motion for summary judgment on this ground is denied.

12

### 3. Plaintiffs' Assumption of the Risk and Contributory Negligence

Finally, Holland contends that plaintiffs assumed the risk of the accident or were contributorily negligent in causing it.  There are two doctrines of assumption of the risk.  Arbegast v. Bd. of Educ. of South New Berlin Cent. Sch., 480 N.E.2d 365, 368 (N.Y. 1985).  Express, or primary, assumption of the risk, precludes recovery and is based on a preexisting agreement stating that "defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent."  Id. at 371.  Primary assumption of the risk is "limited to situations where there is an elevated risk of danger, typically in a [professional] sporting or entertainment activity."  Coole-Mayhew v. Timm, 794 N.Y.S. 2d 486, 487 (N.Y.A.D.. 3d Dep't 2005) (citations omitted); see also Turcotte v. Fell, 502 N.E.2d 964, 967-69 (N.Y. 1986) (explaining the doctrine as a mutual agreement where "[d]efendant's duty . . . is . . . to exercise care to make the conditions as safe as they appear to be. [Thus, i]f the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty," the defendants is entitled to the affirmative defense).

This doctrine is inapplicable to the facts of this case.  First, plaintiffs were not professional, or even avid, boaters.  M. Pearce Dep. Tr. 1 at 14-15; W. Pearce Dep. Tr. 1 at 6-8; M. Pearce Aff. at ¶¶ 12-15.  They rented the boat for the day as a recreational, leisure activity.  Moreover, Holland did not make the boat as safe as it could have been or as it appeared to be, as the mechanical defect was not plainly visible.  Therefore, none of the elements are present to support a primary assumption of the risk defense.

13

The second doctrine of assumption of the risk is frequently referred to as implied assumption of the risk and analyzed with contributory negligence under the general rubric of comparative negligence.  See, e.g., Rogers v. Westfalia Associated Technologies, Inc., 485 F. Supp. 2d 121, 129 n.15 (N.D.N.Y. 2007).  Under New York law, a plaintiff's conduct may be considered by a jury in allocating responsibility for any damages resulting from negligent conduct but imposes no bar to recovery.  N.Y.C.P.L.R. § 1411 (McKinney 2002).  Thus, any finding of implied assumption of the risk by plaintiffs here will result in the proportional reduction of any damages but not a total bar to recovery.  See id.  Additionally, since the extent of plaintiffs' boating skills and experience are questions of fact, these defenses present quintessential jury questions not properly decided on a motion for summary judgment.  See Schmidt v. S.M. Flickinger Co., Inc., 452 N.Y.S. 2d 767, 767 (N.Y.A.D.. 3d Dep't 1982) ("This process involves questions as to the degree that the parties' respective conduct may have contributed to the accident which are fact questions and clearly within the province of the jury.") (citations omitted).

Therefore, Holland's motion for summary judgment is denied on these grounds as well.

## C. Fogarty's

### 1. Duty to Plaintiffs and Kevin Pearce

Plaintiffs rented the Four Winns from Holland and had no direct contact with Fogarty's. Generally, contractual obligations between two parties "will not give rise to . . . liability in favor of a third party."  See Davilmar v. City of New York, 775 N.Y.S.2d 880, 881 (N.Y.A.D. 2d

14

Dep't 2004). New York law recognizes exceptions to this general rule in three

circumstances:

> (1) where the contracting party, in failing to exercise reasonable care
> in the performance of his duties, launches a force or instrument of
> harm; (2) where the plaintiff detrimentally relies on the continued
> performance of the contracting party's duties and (3) where the
> contracting party has entirely displaced the other party's duty to
> maintain the premises safely.

See generally Espinal v. Melville Snow Contractors, Inc., 773 N.E.2d 485, 488 (N.Y. 2002)

(internal quotation marks and citations omitted).

The first exception occurs where defendants have "[e]xacerbat[ed] or creat[ed] a

dangerous condition." Espinal, 773 N.E.2d at 490; see also H.R. Moch Co., Inc. v.

Rensselaer Water Co., 247 N.Y. 160, 168 (N.Y. 1928) ("The query always is whether the . . .

wrongdoer has advanced to such a point as to have launched a force or instrument of harm,

or has stopped where inaction is at most a refusal to become an instrument for good.")

(citations omitted); Altamirano v. Door Automation Corp., 851 N.Y.S.2d 508, 509 (N.Y.A.D..

1st Dep't 2008) (affirming denial of summary judgment and extending the first exception to a

"noncontracting third party" where defendant proffered "no evidence to rebut the facts . . .

that its repair of [a] door created a condition so dangerous as to bring plaintiff's claim within

the exception to the rule normally precluding . . . liability.").

The second exception arises in circumstances where maintenance and repair

contracts have explicitly "comprehensive and exclusive" language leading a third party to

trust that the equipment is in proper working order. See Hopper v. Regional Scaffolding &

Hoisting Co., 800 N.Y.S.2d 3, 4 (N.Y.A.D.. 1st Dep't 2005) (holding subcontractor liable for

plaintiff's injuries where subcontractor did not properly maintain the hoist on which plaintiff

15

was working pursuant to the comprehensive and exclusive contract); <u>Wroblewski v. Otis</u>

<u>Elevator Co.</u>, 193 N.Y.S.2d 855, 858 (N.Y.A.D.. 3d Dep't 1959) (reversing and remanding

case for a new trial because it was unclear whether third party elevator maintenance

company negligently performed its contract to "service . . . examin[e] . . . and mak[e]

necessary minor adjustments" to an elevator when they inspected the elevator hours before it

malfunctioned).

The final exception requires a comprehensive and exclusive contract drawn so

broadly that the third party "entirely displaced the [contracting party] in carrying out [its] duties

and became the sole privatized provider for [such duties]."  <u>Espinal</u>, 773 N.E.2d at 488

(citing <u>Palka v. Servicemaster Mgmt. Servs. Corp.</u>, 634 N.E.2d 189, 194-95 (N.Y. 1994)

(holding third party liable where third party's all-inclusive maintenance contract rendered it

the only guarantor of "a safe and clean . . . premises.")).

In this case, none of these exceptions apply.  First, Fogarty's only obligation to

Holland was its verbal contract to repair the "no spark" problem.  Fogarty Dep. Tr. at 24-25,

44, 45; Rooks Dep. Tr. at 68, 71-72; Tylawsky Dep. Tr. at 21-22; Docket No. 50-16 at 52-53;

Docket No. 52-35 at 1-2.  Fogarty's noted that the boat also had a shifting problem which

Rooks unsuccessfully attempted to diagnose and repair on the scene.[6]  <u>See</u> <u>generally</u> Rooks

Dep. Tr. at 80-87, 90-92.  Even viewing the evidence in the light most favorable to plaintiffs,

no evidence exists that Rook's failed to exercise reasonable care in remedying the "no spark"

---

[6] Even if Rooks negligently performed initial diagnostic tests, there has been
proffered no evidence that Rooks' actions exacerbated the shifting problem.  Tylawsky
Dep. Tr. at 59-62.  Thus, no evidence exists that Rooks' "repair of the [boat] created a
condition so dangerous as to bring [the] claim within the exception to the rule normally
precluding . . . liability."  <u>Altamirano</u>, 851 N.Y.S.2d at 509.

16

problem and attempting to determine the cause of the shifting problem.  Fogarty's did not

create or exacerbate this condition.  Tylawsky Dep. Tr. at 49-50, 59-62.  Fogarty's was only

required to repair the ignition problem and was under no obligation to repair the shifting

problem until Holland consented.  Kueny Dep. Tr. at 53; Docket No. 50-16 at 53; Docket 52-

35 at 2.  After informing Holland of the shifting problem, Holland declined to consent to

Fogarty's continuing to perform further mechanical work, Holland took the boat back into their

possession, and Holland, not Fogarty's, opted to send the alleged instrument of harm out for

use by the public.

        As to the second and third exceptions, Fogarty's did not have a continuing contract

with Holland.  Moreover, as stated above, Fogarty's obligations to Holland were specific and

limited.  Thus, there was no expectation that Fogarty's would perform all maintenance

functions for Holland's boats.  Rooks Dep. Tr. at 30.  There exists no evidence that plaintiffs,

Kevin Pearce, or any other customer relied on Fogarty's in renting Holland's boats.  Thus, no

evidence has been offered that plaintiffs, Kevin Pearce, or any other customer detrimentally

relied on Fogarty's to assure that the boats worked properly and Fogarty's was not asked,

and did not consent, to undertake that responsibility.

        Therefore, Fogarty's motion for summary judgment is granted on this ground.


## 2.  Causation

        "It is elementary that to find a party liable in negligence, there must have been a duty

[between the two parties] . . . ."  Stanford v. Kuwait Airways Corp., 89 F.3d 117, 123 (2nd Cir.

1996).  Such a duty may be found even in the absence of privity if "one of ordinary sense . . .

17

would at once recognize that if he did not use ordinary care and skill in his own conduct . . .

he would cause danger of injury to the person or property of another . . . ." Id. (internal

quotation marks and citations omitted).

In this case, there is no dispute that no contract existed between Fogarty's and

Holland to repair the shifting defect.  Additionally, there is no dispute that Fogarty's assumed

a duty to repair only the "no spark" problem.  Fogarty Dep. Tr. at 24-25, 44, 45; Rooks Dep.

Tr. at 68, 71-72; Tylawsky Dep. Tr. at 21-22; Docket No. 50-16 at 52-53; Docket No. 52-35 at

1-2.  After completing this repair, Rooks inadvertently discovered the shifting problem,

attempted repair on the scene, and then awaited consent by Holland to continue working on

the shifting issue.  Rooks Dep. Tr. at 70, 80-87, 90-92.  As previously discussed, even

viewing the evidence in the light most favorable to plaintiffs, no evidence exists that Rooks

failed to exercise ordinary care and skill in attempting to diagnose the shifting problem or that

any act of Rooks exacerbated the shifting defect.  Tylawsky Dep. Tr. at 59-62.  After Rooks

advised Holland of the problem, no consent was given to continue working on the Four

Winns and Holland took the boat back into his possession.  Rooks Dep. Tr. at 90-92.  This

effectively terminated any obligation that Fogarty's had to Holland.  Viewing the evidence in

the light most favorable to plaintiffs and Holland, Fogarty's acted reasonably in diagnosing

and informing Holland of the shifting problem and Holland's actions effectively terminated

any further duty Fogarty's could have possessed.[7]

---

[7] Holland's actions effectively terminated any implied contract between the two
parties.  "It is well-settled that under New York law, implied promises in commercial
agreements are enforceable."  Cohen v. Elephant Wireless, Inc., No. 03-CV-4058 (CBM),
2004 WL 1872421, at *7 (S.D.N.Y. Aug. 19, 2004) (citations omitted).  However courts will
interpret transactions "to give effect to the intention of the parties as expressed in the

Thus, Fogarty's motion for summary judgment is also granted on this ground.

### 3. Contribution

Holland and Kevin Pearce assert claims for contribution from Fogarty's.  As discussed above, Fogarty's had no duty to plaintiffs.  Absent such a duty, Fogarty's generally cannot be held liable for contribution to any defendant.  See Rogers, 485 F. Supp. 2d at 130 n.18 ("[T]he existence of some form of tort liability is a prerequisite to a contribution claim.") (citing Trump Vill. Section 3, Inc. v. New York State Housing Finance Agency, 764 N.Y.S.2d 17, 22-23 (N.Y.A.D. 1st Dep't 2003)).

In Trump Village, the requirement of a duty before liability for contribution was clarified to include "a breach of duty that runs from the contributor to the defendant who has been held liable."  764 N.Y.S.2d at 23 (citations omitted).  However, Fogarty's assumed no duty to Holland with respect to the shifting defect.  Fogarty's assumed only a duty to repair the "no spark" problem.  Fogarty's completed that repair, inadvertently discovered the shifting problem, attempted its repair on the scene, and awaited consent from Holland to continue working on the shifting issue.  Holland gave no such consent and took the boat back into its possession.  Thus, the evidence is undisputed that no express or implied agreement existed for Fogarty's to repair the shifting defect was created.  Id. (holding that the alleged contributor's "contractual duties were limited to" one specific task and no duty of care existed

---

unequivocal language they have employed."  Id. (citations omitted).  Therefore, Holland's direct, express, and unequivocal refusal to have Fogarty's engage in any further repair work served to sever any implied contract created between the two parties when Rooks initially attempted to repair the shifting problem.

19

running from the contributor to the liable defendants); see also Rogers, 485 F. Supp. 2d at 130 n.18 (dismissing claims for both contribution and indemnification in the absence of a legal duty).

Accordingly, Fogarty's motion for summary judgment as to Holland's cross-claim for contribution is granted.

**4. Indemnification**

Holland and Kevin Pearce also assert claims against Fogarty's for indemnification. "In New York, indemnification claims must be grounded in contract either express or implied." Carr v. Michael Weinig, AG, No. 01-CV-1514 (HGM/GJD), 2006 WL 2355867, at *4 (N.D.N.Y. Aug. 14, 2006) (citing Cohen, 2004 WL 1872421, at *7); McDermott v. City of New York, 406 N.E.2d 460, 462 (N.Y. 1980) ("The right to indemnity . . . springs from a contract, express or implied, and full, not partial, reimbursement is sought.")). "Unless the intention to indemnify is 'unmistakably clear' from the language of the agreement, the Court will not read into an agreement a legal duty the parties did not clearly intend." Coastal Power Intern'l, Ltd. v. Transcontinental Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999) (citations omitted).

As discussed above, no evidence exists that Fogarty's owed a duty to plaintiffs or Holland with respect to the shifting problem. No contractual obligation has been found between Fogarty's and Holland. Thus, no claim for indemnification against Fogarty's can survived based on an asserted contract. Rogers, 485 F. Supp. 2d at 130 n.18.

"[C]ommon law indemnification requires a showing that the claiming party was not actively negligent in contributing to the plaintiff's injuries." Yansak v. Blackburn Group, Inc.,

793 N.Y.S.2d 698, 701 (N.Y. Sup. Schenectady County 2004).  In this case, substantial

evidence has been proffered that Holland and Kevin Pearce were negligent, contributing to

plaintiffs' injuries.  First, there is no dispute that Kevin Pearce left the boat running while his

mother attempted to board in contravention of the boat's warnings and common boating

practice.  K. Pearce Dep. Tr. at 46, 55-56; Tylawsky Dep. Tr. at 66-69.  Holland decided to

rent the Four Winns even with knowledge that there existed a shifting problem which

substantially increased the possibility of a propeller injury.  Tylawsky Dep. Tr. at 109-10, 148-

49; Tylawsky Aff. ¶¶ at 38-39, 45; Docket No. 50-16 at 29; Kueny Dep. Tr. at 88-89, 97-99.

In light of this undisputed evidence, the indemnification claims cannot survive.   See

generally First Bible Baptist Church, Inc. v. Gates-Chili Cent. Sch. Dist., 172 A.D.2d 1057,

1058 (N.Y.A.D. 4th Dep't 1991) ("[A] defendant cannot recover on the theory of implied

indemnification where, as here, it is alleged that the proposed indemnitee actually

participated to some degree in the wrongdoing.") (citations omitted).

 Therefore, Fogarty's motion for summary judgment on these claims is granted.


### III.  Conclusion

 For the reasons stated above, it is hereby **ORDERED** that:

  1. Holland's motion for summary judgment (Docket Nos. 50-51) is **DENIED**;

  2. Fogarty's motion for summary judgment (Docket No. 52) is **GRANTED**

as to all claims, cross-claims, and counterclaims against it and the action is **TERMINATED**

as to Fogarty's; and

  3. Plaintiffs' request for an award of costs incurred in responding to

defendants' motions is **DENIED** as both defendants' motions were grounded in fact and law

and filed in good faith.

**IT IS SO ORDERED.**

DATED:  June 5, 2009
            Albany, New York

David R. Homer
U.S. Magistrate Judge